JAMES H. WENTWORTH & others *vs.* S. A. WOODS MACHINE
COMPANY & another.

Suffolk.   December 4, 1894. — January 8, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Equity Practice — Appeal from Decree — Conditional Contract of Sale — Find-*
*ing — Realty and Personalty — Insolvent Debtor — Preference.*

Upon an appeal from a decree of a justice of the Superior Court dismissing a bill
in equity, after a hearing upon the merits, the evidence having been reported to
this court, and the report containing no statement of rulings made or of facts
found, if the evidence warranted a finding of facts on which the decree could
properly be made, the decree must be affirmed ; and, so far as the decision
depends on findings of fact, it will be sustained, unless the findings are clearly
erroneous.

If a contract under which personal property is delivered passes no title until a
certain condition is performed, the vendor, in the absence of such performance,
if guilty of no laches, may reclaim the property, even from one who has pur-
chased from the vendee in good faith and without notice.

A. bought certain machines of a corporation under written instruments, reciting
that he had "borrowed and received" of the corporation the machines, the
price of which was stated, and containing the following provisions: "If the
price set against them is paid as per memorandum in the margin, the property
is then to belong to such borrower, otherwise it remains the property of " the
corporation. "Notes and drafts, if given, are not to be considered as payments
until they are paid, and all part payments are to be forfeited by non-payment of
the balance at the time stated. . . . And said borrower agrees to pay such price
as per memorandum." They also contained a "memorandum of payments to
be made," consisting of one cash payment and the balance in a series of
promissory notes. A. gave the corporation the notes called for by the terms
of the instruments, some of which were paid at maturity, and others were not,
and upon the latter he made small payments in cash at different times and gave
renewal notes for the balance, and these latter notes were themselves renewed
several times in many instances, the amounts thereof being reduced by partial
cash payments; and these payments were applied to the notes falling due with-
out regard to the particular instrument. The corporation wrote to him fre-
quently, urging payment of amounts overdue, but never made any claim under
the forfeiture clause in the instruments. A. died, owing a large sum on the
notes thus given. *Held*, that these facts warranted a finding that the corpora-
tion did not waive the condition of the instruments, and that the condition was
not performed.

If a machine delivered under a contract which passes no title until a certain con-
dition is performed is of such a character, and if, with the knowledge and con-
sent of the vendor, it is affixed to real estate in such a manner and under such
circumstances, as would make it a part of the realty according to the rules
applied between grantor and grantee, and if a third person acquires a title to

the real estate without notice of the title of the vendor of the machine by reason of non-performance of the condition of sale, the machine will belong to such purchaser of the real estate under his deed.

A. bought certain machines of B. under contracts called leases, containing a condition that the title should not pass until the purchase money was all paid. At the time of the purchase, and for a long time afterwards, A. was only a tenant of the building in which the machines were placed, which was used by him as a planing mill. He got them insured as personal property, and the insurance was made payable to B. as his interest might appear. A. became insolvent before he had paid for the machines, and in the insolvency proceedings B. was included in the list of creditors, and his debt was alleged to be secured by leases. Previously to A.'s insolvency, the real estate on which the mill stood was conveyed to him, he giving to the grantor his promissory note in part payment of the purchase price, and a mortgage on these machines as personal property to secure the payment of the note. The machines rested on the floor, and were fastened merely by screws through holes in the legs for the purpose of steadying them; they were of a regular stock pattern, they could be removed without injury to the building, and they were suitable for use in any other planing mill. *Held*, upon an appeal from the decree of a single justice dismissing a bill in equity, brought by one acquiring title to the real estate to restrain B. from taking the machines under his leases, that a finding that the machines had not become a part of the realty was warranted by the evidence.

A. bought certain machines of B. under contracts called leases, containing a condition that the title should not pass until the purchase money was all paid. He became insolvent, and died before he had paid for the machines. *Held*, that the administrator of A.'s estate should not be ordered to pay B. the sum due him under his leases.

BILL IN EQUITY, filed in the Superior Court on May 18, 1893, by James H. Wentworth and Irving W. Ireland, copartners under the name of James H. Wentworth and Company, and Frank F. Marcy, against the S. A. Woods Machine Company, a corporation, and Albert L. Harwood, administrator *de bonis non* of the estate of Alfred Fitzpatrick, deceased, to restrain the defendant corporation from taking, by writ of replevin or otherwise, certain machines under alleged leases, and to compel the defendant Harwood, as administrator, to pay to the defendant corporation all sums found to be due it under such leases.

At the hearing, it appeared in evidence that Fitzpatrick, the intestate, entered upon and became possessed of certain premises in Newton in January, 1889, with the intention of purchasing the same and erecting a planing mill thereon; that on February 19, 1889, Fitzpatrick, for a valuable consideration, gave his promissory note for $4,000, payable in three months from its date, to the plaintiff Marcy, secured by a mortgage of the machines, fixtures, and implements on the premises; that on March

19, 1889, Walter C. Lawrence, the owner of the premises, conveyed them to Marcy by warranty deed; that on January 22, 1891, Fitzpatrick gave to Marcy a bill of sale, in the usual form, of the machines, implements, and fixtures included in the mortgage above mentioned, and Marcy took possession of the same and discharged the mortgage; that on January 28, 1891, Fitzpatrick filed his petition in the Court of Insolvency for the county of Middlesex, was duly adjudicated insolvent, and on January 14, 1892, obtained his discharge; that on January 30, 1891, Marcy, by deed of indenture, leased to Fitzpatrick the premises in question, with the machinery, fixtures, etc., for the term of one year, and the lessee occupied under the same; that on May 7, 1892, Marcy, at the purchase price of $10,000 and the assumption of an existing mortgage, delivered to Fitzpatrick a warranty deed conveying to him the premises, and Fitzpatrick thereupon gave his promissory note for the purchase price, and secured the payment of the same by a mortgage of the real estate and also a mortgage of the machines, fixtures, and implements thereon; that Fitzpatrick occupied the premises and carried on the business of a planing mill from his entry thereon in January, 1889, until his death on August 11, 1892; that on September 13, 1892, Isaiah T. Loveland was appointed administrator of the estate of Fitzpatrick, and continued as such until February 10, 1893, when he died; that on March 14, 1893, the defendant Harwood was duly appointed administrator of the goods and estate of Fitzpatrick not already administered; and that in December, 1892, Marcy, under the powers and for the breach of the conditions in the mortgage given by Fitzpatrick to him, and for the purpose of foreclosing the same, took possession of the real estate, fixtures, and machines described therein, and afterwards, on December 23, 1892, by deed of indenture, leased the real estate, machines, fixtures, and implements to the plaintiffs James H. Wentworth and Company.

Elroy N. Heath, the treasurer of the defendant corporation, testified, in substance, that Fitzpatrick had bought many machines of the corporation for use in his business; and that all had been paid for except three, which went into his planing mill, and which were delivered to him under written instruments, dated respectively February 15, April 9, and April 20,

1889, reciting that he had "borrowed and received" of the corporation the machines, the price of which was stated, and containing the following provisions: "If the price set against them is paid as per memorandum in the margin, the property is then to belong to such borrower, otherwise it remains the property of S. A. Woods Machine Co. Notes and drafts, if given, are not to be considered as payments until they are paid, and all part payments are to be forfeited by non-payment of the balance at the time stated; in the mean time the borrower is to keep the property in good order, and may use it free from any other charge. And said borrower agrees to pay such price as per memorandum, and to keep the property sufficiently insured for the benefit of the said S. A. Woods Machine Co." They also contained a "memorandum of payments to be made," consisting of one cash payment, and the balance in a series of promissory notes.

The witness further testified that the price of two of the machines was $800 each, and of the other $900; that Fitzpatrick gave the corporation the notes called for by the terms of the instruments, some of which were paid at maturity, and others were not, and upon the latter he made small payments in cash at different times and gave renewal notes for the balance, and these latter notes were themselves renewed several times in many instances, the amounts thereof being reduced by partial cash payments; that these payments were applied to the notes falling due, without regard to the particular instrument; that, at the time of his death, there was due on these notes the sum of $518.39, without interest; that this sum had not been paid; and that the corporation never made any claim under the forfeiture clause in the instruments.

Several letters from the corporation to Fitzpatrick, urging payment of amounts overdue, and also letters from the corporation to the administrator of his estate, calling attention to the matter, and asking for payment of the balance due, were put in evidence. There was also evidence that the machines in question weighed from three thousand to forty-five hundred pounds each; that they rested on the floor of the mill, and were fastened merely by screws through holes in the legs for the purpose of steadying them; that they were of a regular stock pattern, they could be removed without injury to the building, and were suit-

able for use in any other planing mill; that Fitzpatrick had the machines insured as personal property, " with the loss payable to the" corporation " as their interest might appear"; that in the insolvency proceedings of Fitzpatrick the corporation was included in the list of creditors, its security being described as leases; and that the corporation did not prove any claim against the insolvent estate. The defendant Harwood testified that the amount of Fitzpatrick's estate, including outstanding claims, was about $1,600; and that the amount of his indebtedness, outside of the claim of the defendant corporation, exceeded $6,500.

A decree was entered adjudging that the machines were the absolute property of the defendant corporation, and that the plaintiffs were entitled to no relief against the defendant Harwood; and dismissing the bill, with costs. The plaintiffs appealed to this court.

*J. C. Ivy*, for the plaintiffs.

*J. S. Dean*, for the defendants.

KNOWLTON, J. This is an appeal from a decree of a justice of the Superior Court sitting in equity. The evidence is reported, and the report contains no statement of rulings made or facts found. If the evidence warranted a finding of facts on which the decree could properly be made, the decree must be affirmed. So far as the decision depends on findings of fact it will be sustained, unless the findings are clearly erroneous. *Francis* v. *Daley*, 150 Mass. 381. *Sheffield* v. *Parker*, 158 Mass. 330. *Debinson* v. *Emmons*, 158 Mass. 592. *Biggerstaff* v. *Marston*, 161 Mass. 101.

The contracts under which the machines were delivered pass no title until the condition is performed, and the vendor, if guilty of no laches, may reclaim the property, even from one who has purchased from the vendee in good faith, and without notice. *Coggill* v. *Hartford & New Haven Railroad*, 3 Gray, 545. *Hirschorn* v. *Canney*, 98 Mass. 149.

The evidence well warranted the finding that the defendant the Woods Machine Company did not waive the condition, and that the condition was not performed.

If the machines were of such a character, and if with the knowledge and consent of the Woods Machine Company they

were affixed to the freehold in such a manner and under such circumstances as would make them a part of the real estate according to the rules applied between grantor and grantee, and if the plaintiffs acquired a title to the real estate without notice of the title of the machine company, they would belong to the plaintiffs under their deeds. *Ridgeway Stove Co.* v. *Way*, 141 Mass. 557. *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542. This proposition presents for consideration questions of fact which must have been decided against the plaintiffs at the hearing. The evidence well warranted this decision. Fitzpatrick, when he ordered the machines, and for a long time afterwards, was only a tenant of the building in which they were placed. He got them insured as personal property, and the insurance was made payable to the S. A. Woods Machine Company as its interests might appear. In his insolvency proceedings the Woods Manufacturing Company was included in his list of creditors, and its debt was alleged to be secured by instruments described as leases. When the real estate was conveyed to him he gave the plaintiff Marcy his note for $10,000 in part payment of the price, and he gave a mortgage on these machines as personal property to secure the note. The machines rested on the floor, and were fastened merely by screws through holes in the legs for the purpose of steadying them, they were of a regular stock pattern, they could be removed without injury to the building, and they were suitable for use in any other planing mill. All of these were facts proper to be considered by the judge in determining the question whether the machines had become a part of the real estate. It was a question of mixed law and fact, depending for its answer in part upon the intention of Fitzpatrick as manifested by his acts. We see no reason to question the correctness of the decision of the judge. Certainly his decision cannot be set aside as plainly wrong. *Hubbell* v. *East Cambridge Five Cents Savings Bank*, 132 Mass. 447, 449. *Carpenter* v. *Walker*, 140 Mass. 416. *Southbridge Savings Bank* v. *Mason*, 147 Mass. 500. *Carpenter* v. *Allen*, 150 Mass. 281. *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519.

The plaintiffs contend that the administrator of Fitzpatrick should be ordered by the court to pay the S. A. Woods Machine Company the sums due to it under the leases which it holds on

the property. The Superior Court rightly held otherwise. It appears that the estate of Fitzpatrick is deeply insolvent, and a use of the assets to redeem this property for the benefit of the plaintiffs, to one of whom Fitzpatrick mortgaged it, would be a preference of the plaintiffs over other creditors of the estate that would be inequitable. *Crompton* v. *Pratt*, 105 Mass. 255. *Knight* v. *Thayer*, 125 Mass. 25.                         *Decree affirmed.*