LANCASTER IRON WORKS, INC. *vs.* OTTER RIVER BRICK COMPANY.

Worcester.   September 23, 1931. — October 2, 1931.

Present: RUGG, C.J., CROSBY, WAIT, & SANDERSON, JJ.

*Sale*, Conditional: recording.   *Words*, "Heating apparatus," "Plumbing goods."

Machinery and equipment for drying bricks indoors by means of heat, purchased under a contract of conditional sale and installed in and connected with a building by bolts and nuts, couplings and nipples, and removable by their being unscrewed, unbolted and detached without brick or mortar being injured, where it appeared that the heat in the apparatus was used as a part of the process in making bricks and not for the purpose of rendering the building comfortable for habitation, were neither "heating apparatus" nor "plumbing goods" within the meaning of the words in G. L. c. 184, § 13, nor could they be said to be property of the same kind or of the same general description as those articles; and therefore a recording of notice of such sale under the statute was not a prerequisite to enforcement of a right of the conditional vendor, after default under the contract of conditional sale, to replevy such machinery and equipment from the building after the building had been conveyed by the conditional vendee to a third person.

REPLEVIN.   Writ dated May 20, 1927.

In the Superior Court, the action was tried before *Brown,* J.   Material facts are stated in the opinion.   The judge ordered a verdict for the defendant and reported the action for determination by this court.

*J. A. Crotty,* for the plaintiff.

*W. M. Quade,* for the defendant, submitted a brief.

SANDERSON, J.   This is an action of replevin in which the plaintiff's title and right to possession arose out of a conditional sale contract entitled "Contract for Brick Machinery."   The judge ruled that the contract was within G. L. c. 184, § 13, relating to the recording of notice of conditional sale of "heating apparatus, plumbing goods, ranges or other articles of personal property, which are afterward wrought into or attached to real estate"; upon

that ground he allowed the defendant's motion for a directed verdict and reported the case with a stipulation that, if his order was wrong, judgment should be entered for the plaintiff; otherwise the verdict for the defendant should stand and nominal damages should be awarded to the prevailing party.

The conditional sale contract was executed between the plaintiff and the defendant's predecessor in title in February, 1923. In May of that year the property was delivered and placed in a building owned by the purchaser. The contract provided that the machinery and equipment should remain the property of the plaintiff and subject to its order until paid for in full, and that in case of default in payment the plaintiff might take possession of and remove the machinery and equipment without legal process. Notice of the conditional sale contract was not recorded and the contract is in default. The property in question was a part of a drying machine used in making bricks. Before being dismantled the articles replevied were assembled and connected with one another and with the building by bolts and nuts, couplings and nipples, and in order to remove the equipment and dismantle it, nothing had to be done but to unscrew or unbolt the parts. Each rack, which forms a part of the apparatus, stands upon two piers of cement in the floor of the building. From each of these piers project two bolts which are inserted into the holes at the bottom of each side of the rack and upon each rack is screwed a removable nut so that the rack is removed by unscrewing the nuts and lifting it off the bolts. At the top, the racks are fastened by bolts and removable nuts to two angle irons running lengthwise in the building and these in turn are attached to heavier angle irons upon the end wall of the building which are fastened thereto and to the lengthwise angle irons by bolts and removable nuts. A pipe is connected with the manifold by nipples or threaded section. The equipment was designed so that it could be removed, and in removing it no brick or mortar was injured. The machinery was patented standard equipment. The equipment in question was an inside drier and fur-

nished an alternative method of drying bricks, the other method being to dry them out of doors in roofed racks by sun and wind. The apparatus was not designed for a heating system although there was no heat in the building winter or summer except such as might be given off by this system. While the employees were working in the building and placing the bricks on the racks there was no heat in the system, and the heat was turned off when the employees entered the building to remove the bricks. In May, 1927, the defendant agreed that the plaintiff might dismantle the equipment provided a replevin writ was served before the equipment was removed from the premises. Pursuant to this agreement the equipment had been dismantled and was outside the building when the writ was served.

We understand the findings to mean that the heat in the apparatus in question is used as a part of the process in making bricks and not for the purpose of rendering the building comfortable for habitation. The equipment in question could not be ruled to be either heating apparatus or plumbing goods within the meaning of those words in the statute, nor could it be said to be property of the same kind or of the same general description as those articles. *Babcock Davis Corp.* v. *Paine,* 240 Mass. 438, 441. *J. H. Gerlach Co. Inc.* v. *Noyes,* 241 Mass. 69, 73. *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349. For these reasons the judge erred in ruling that the conditional sale contract was within the provisions of G. L. c. 184, § 13.

In accordance with the terms of the report judgment must be entered for the plaintiff and damages be assessed in the sum of $1.

*So ordered.*