Lenk, J.
Plaintiffs cursory Motion to File Amended Complaint to add a G.L.c. 93A claim was filed on October 28, 1993. This was roughly one year after plaintiff first brought its one-page complaint, seeking damages for defendant Berry’s alleged wrongful termination of a construction subcontract whereby plaintiff alleges it was to perform certain drywall work. This case was designated a fast-track case and the discovery period had expired at the time plaintiff sought to amend its complaint.
The c. 93A claim which plaintiff desires to add essentially alleges that defendant Berry, the construction manager for the project (Center for Women & *453 Newborns at Brigham & Women’s Hospital), unfairly and deceptively permitted plaintiff to participate in the private bidding process for the diywall subcontract when it had no intention of awarding plaintiff such subcontract. Instead, plaintiff asserts, Berry was only using plaintiff to obtain a low price which Berry could then use to negotiate with other bidders.
Defendant opposed plaintiffs one-page Motion to File Amended Complaint, unaccompanied as it was by memorandum or affidavit, arguing that: (1) the proposed amendment was too late in two respects: (a) it came well past the March 15, 1993 tracking order deadline for amended complaints which plaintiff had never requested be extended, despite the parties’joint agreement to extend the discovery deadline from August 12 to October 8, 1993; and (b) the proposed amendment materially alters and expands the claim after discovery closed; (2) there was no excuse for the delay since the information upon which plaintiff asserts that it based its c. 93A claim and which, without any specificity, it claims only to have learned in the late summer/fall of 1993 was, according to Berry, known to plaintiff since 1992 and, certainly, while the discovery period was still open; (3) defendant would be prejudiced by the allowance of such motion since it had not conducted its discovery, case assessment and case preparation based on the existence of a c. 93A claim and would not be able to do so given the expiration of an already extended discovery deadline; (4) the proposed amendment violates pleading requirements as to the specificity required for what defendant claims is essentially a fraud claim; and (5) any harm caused plaintiff by the denial of its motion is of its own making in light of plaintiffs tardiness in the discovery process.
Because plaintiff had not advanced an adequate explanation or basis for its motion, and in light of defendant’s substantive and persuasive opposition, I denied the motion on November 8, 1993.
On December 7, 1993, plaintiff filed its motion for reconsideration, accompanied by a brief and an affidavit in support thereof, which defendant opposed. In essence, plaintiff claims that its motion was timely under the circumstances since it was only within the last portion of the discovery period that it had learned sufficient information which would permit it to plead a c. 93A claim. It further claims that defendant would not be prejudiced by the addition of a c. 93A claim because the operative facts and evidence at trial would be essentially the same.
On December 31, 1993,1 heard the parties at length regarding this matter and I have thoroughly reviewed the parties’ written submissions. Having considered the arguments presented by counsel and for the reasons stated below, I once again deny plaintiffs motion to file an amended complaint.
As an initial matter, I am not persuadéd that Manganaro’s delay in seeking to assert a c. 93A claim was excusable. This was a fast track case and expeditious discovery as to the potential c. 93A claim was warranted, particularly since plaintiff had information which, at a minimum, suggested that such a claim might be waiting in the wings. Manganaro did not expedite such discovery. Moreover, by June 1993, Manganaro appears to have had sufficient information on which to base such a claim — a time still within the discovery period. Yet it waited until after the discovery period was over to seek to add the claim.
Further, I am persuaded that to allow introduction of a c. 93A claim of the type which plaintiff contemplates at this late stage would prejudice defendant. By its nature, such a claim brings with it the potential for treble damages and attorneys fees and rationally alters any risk assessment previously performed regarding the litigation. This would affect the type and scope of necessary discovery and case preparation, including the decision to retain experts, even if precisely the same conduct as alleged in other counts formed the basis for the c. 93A count. Here, however, the conduct which forms the basis for the breach of contract count is not the same as that for the c. 93A count. The operative facts of the contract count concern whether defendant actually entered into a subcontract with plaintiff. The operative facts of the c. 93A claim would be far more extensive, involving whether the entire process of competitive negotiation and bidding (as done by Berry in this case and, if Berry’s practice is common to the industry as plaintiff suggested in open court, whether the industry practice) was unfair or deceptive. The theories of liability, the factual showing necessary to establish liability and the theories of causation of damages appear to be different on the two claims. Considerable additional discovery, and the retention of experts, would reasonably be required.
Mass.R.Civ.P. 15(a) provides that leave to amend a complaint “shall be freely given when justice so requires.” The general rule in Massachusetts is that leave to amend should be freely given in absence of “some good reason to deny it.” Evans Prods. Co. v. D.J. Dev. Corp., 6 Mass.App.Ct. 306, 309 (1978). Here, the undue delay, the introduction of an entirely new theory of recovery at such a late stage, and the prejudice which defendant would suffer constitute such good reason. Walsh v. Chestnut Hill Banks and Trust Co., 414 Mass. 283 (1993); Castellucci v. United States Fidelity & Guaranty Co., 372 Mass. 288 (1977).